# EXHIBIT D





Policy Number:
**DOP1000007**

# DECLARATIONS

Insurance is afforded by the Insurer indicated below:
MSIG SPECIALTY INSURANCE USA
(a capital stock corporation)

**THIS IS A CLAIMS-MADE INSURANCE POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMITS OF LIABILITY. THE COVERAGE SEGMENTS OF THIS INSURANCE POLICY (WHICHEVER ARE PURCHASED) PROVIDE INSURANCE ONLY FOR CLAIMS FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR THE EXTENDED DISCOVERY AND REPORTING PERIOD (IF PURCHASED).**

**DEFENSE COSTS ARE PART OF LOSS AND AS SUCH ARE SUBJECT TO THE LIMITS OF LIABILITY FOR LOSS. THE LIMITS OF LIABILITY AVAILABLE TO PAY COVERED LOSS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY PAYMENT OF DEFENSE COSTS AND DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

| |
|---|
| Named Insured: **VIVO CAPITAL, LLC** |
| Named Insured Address: **192 LYTTON AVENUE, PALO ALTO, CA 94301** |
| Named Insured Email Address for notice: |
| Organization: **LIMITED LIABILITY COMPANY** |
| Producer: **WILLIS TOWERS WATSON NORTHEAST, INC.** |
| Producer Number: **SL054** |
| Policy Inception Date: **12/30/2024**          Policy Expiration Date: **12/30/2026** <br> at 12:01 A.M., Standard Time at the Named Insured's mailing address shown above. |
| Prior Policy Number: NOT APPLICABLE |
| In return for the payment of premium, and subject to all the terms of this policy, the Insurer agrees with the Named Insured to provide the insurance as stated in this policy. Premium: **$1,000,000** |

| |
|---|
| Claims Address:  send to Mitsui Sumitomo Claims at either *newloss@msigusa.com*  *or* P.O. Box 61000, Newark, NJ 07101 |

© 2024 MSIG Holdings (U.S.A.), Inc. All Rights Reserved.

A Member of
**MS&AD** INSURANCE GROUP



Policy Structure:

| Policy Aggregate Limit of Liability | $ 5,000,000 | | | |
|---|---|---|---|---|
| Coverage Segment Elected | Shared Limit of Liability | Separate Limit of Liability | Retention* | Premium |
| Directors & Officers Liability: | ☒ $5,000,000 | $ | $ 2,000,000 | $ |
| Employment Practices Liability: | ☒ $5,000,000 | $ | $1,500,000 | $ |
| | | | Third Party: $ 1,500,000 | |
| Fiduciary Liability: | ☐ $ | $ | $ | $ |
| Investment Fund Management and Professional Liability: | ☒ $5,000,000 | $ | $ 2,000,000 | $ |
| | | | Total Premium: | $ 1,000,000 |

If ☐ is marked ☒ under Shared Limit of Liability, then the limit shown is a Sublimit of Liability for the indicated Coverage Segment.

*Retention does not apply to the following: Derivative Action Research Cost, Crisis Management Costs, Voluntary Compliance Loss and HIPAA Penalties.

Unless otherwise noted in this policy, Sublimits of Liability and Additional Insurance are part of, and not in addition to, the Limits of Liability of the purchased Coverage Segment. They further reduce, and do not increase, the Limits of Liability of the purchased Coverage Segment.

The Shared Limit of Liability and the Separate Limit of Liability are part of and not in addition to, the Policy Aggregate Limit of Liability. They further reduce, and do not increase, the Policy Aggregate Limit of Liability.

| | Directors and Officers Liability Coverage Segment | Employment Practices Liability Coverage Segment | Fiduciary Liability Coverage Segment | Investment Fund and Professional Liability Coverage Segment |
|---|---|---|---|---|
| Retroactive Date: | | | | |
| Pending Prior Date: | 12/30/2024 | 12/30/2024 | | 12/30/2024 |

| Additional Insurance: | Sublimit of Liability |
|---|---|
| Supplemental Personal Indemnification Insurance for the Directors and Officers Liability Coverage Segment | Not Applicable |
| Crisis Management Costs Insurance for the Directors and Officers Liability Coverage Segment | Not Applicable |
| Crisis Management Costs Insurance for the Employment Practices Liability Coverage Segment | Not Applicable |
| Employed Lawyers Insurance for the Directors and Officers Liability Coverage Segment | Not Applicable |

© 2024 MSIG Holdings (U.S.A.), Inc. All Rights Reserved.




| Other Sublimits of Insurance: | Sublimit of Liability |
|---|---|
| Derivative Action Research Cost Insurance for Directors and Officers Liability Coverage Segment | Not Applicable |
| Covered Penalties Insurance for Fiduciary Liability Coverage Segment: | |
| Voluntary Compliance Loss | Not Applicable |
| Section 502(c) Penalties | Not Applicable |
| Pension Protection Act Penalties | Not Applicable |
| HIPAA Penalties | Not Applicable |
| Health Care Reform Law Penalties | Not Applicable |
| Section 4975 Penalties | Not Applicable |

| Extended Discovery and Reporting Period Option Pricing | Directors and Officers Liability Coverage Segment | Employment Practices Liability Coverage Segment | Fiduciary Liability Coverage Segment | Investment Fund and Professional Liability Coverage Segment |
|---|---|---|---|---|
| First Year | 150% | 150% | | |
| Additional Year(s) | TBD | TBD | | |

Endorsements:

SEE FORM MSES 0101 01 19

Terrorism Risk Insurance Act of 2002, as amended (TRIA):

| Portion of Total Premium for Terrorism Insurance (if applicable):  $ INCLUDED |
|---|

Taxes & Surcharges (if applicable):

| Tax:  $ NOT APPLICABLE |
|---|
| Surcharge:  $ NOT APPLICABLE |

THESE MSIG DIRECTORATE PROTECTION MANAGEMENT LIABILITY INSURANCE DECLARATIONS TOGETHER WITH THE GENERAL TERMS AND CONDITIONS SEGMENT, COVERAGE SEGMENTS AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

© 2024 MSIG Holdings (U.S.A.), Inc. All Rights Reserved.

Policy Number:
**DOP1000007**

## SCHEDULE OF FORMS AND ENDORSEMENTS

Named Insured:     **VIVO CAPITAL, LLC**                                  Effective Date:   **12/30/2024**

12:01 A.M. Standard Time

Producer Name:    **WILLIS TOWERS WATSON NORTHEAST, INC.**       Producer No.:    **SL054**

| | | |
|---|---|---|
| MSES 60911 | 12 24 | DECLARATIONS |
| MSES 72507 | 12 24 | COMBINED POLICY FORM |
| MSES 71903 | 12 24 | SCHEDULE OF INVESTMENT FUNDS |
| MSES 75401 | 12 24 | SPECIFIC LITIGATION EXCLUSION |
| IL   09 85 | 12 20 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| MSES  00 02 | 11 23 | COMPANY SIGNATURE PAGE |
| MSES  01 01 | 01 19 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| MSES  05 04 | 01 19 | EXCLUSION - U.S. ECONOMIC OR TRADE SANCTIONS |

A Member of
**MS&AD** INSURANCE GROUP



Policy Number: **DOP1000007**

## COMPANY SIGNATURE PAGE

**MSIG SPECIALTY INSURANCE USA INC.**
(A New York Stock Company)

| | |
|---|---|
| **Home Office:** | 1251 Avenue of the Americas<br>Suite 810<br>New York, New York 10020-1104<br>(212) 446-3600 |
| **Administrative Offices:** | 15 Independence Boulevard<br>Warren, New Jersey 07059<br>(800) 388-1802 |

Policyholders may use the telephone numbers shown above for any purpose.

---

**IN WITNESS WHEREOF**, the Company has caused this policy to be executed and attested.  Except where prohibited by law or regulation, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**Takehisa Chiba**
**President**

**Stephen P. Tasy**
**Secretary**

MSIG SPECIALTY INSURANCE USA INC.

**MSES 0002 11 23**                                                                                      **Page 1 of 1**
© 2023 MSIG Holdings (U.S.A.), Inc. All rights reserved.

POLICY NUMBER: **DOP1000007**

EFFECTIVE DATE: **12/30/2024**

# GENERAL TERMS AND CONDITIONS

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY. THESE GENERAL TERMS AND CONDITIONS APPLY TO ALL APPLICABLE COVERAGE PARTS. IF THERE IS A CONFLICT BETWEEN THESE GENERAL TERMS AND CONDITIONS AND THE TERMS AND CONDITIONS OF ANY APPLICABLE COVERAGE PART, THE TERMS AND CONDITIONS OF THE APPLICABLE COVERAGE PART SHALL APPLY. THE PROVISIONS OF EACH COVERAGE PART SHALL APPLY ONLY TO THAT PARTICULAR COVERAGE PART AND SHALL IN NO WAY BE CONSTRUED TO APPLY TO ANY OTHER COVERAGE PART OF THIS POLICY.**

**In consideration of the payment of the premium, and in reliance on the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer identified in the Declarations and the Insureds agree as follows:**

**I.      GENERAL DEFINITIONS**

(A)      "**Affiliate**" means any person, organization or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, an **Insured Entity**; provided, however, that a **Portfolio Company** is not an **Affiliate** under this Policy.

(B)      "**Application**" means:

    (1)      the application attached to and forming part of this Policy; and

    (2)      any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(C)      "**Claim**" means:

    (1)      any written demand for monetary or non-monetary (including, but not limited to, injunctive) relief commenced by the receipt of such demand by an **Insured**;

    (2)      any civil, administrative or regulatory proceeding (including without limitation an enforcement proceeding or other proceeding by an **Investigating Authority**) commenced by the filing or receipt by an **Insured** of a notice of charges, notice of deposition, notice of hearing, Wells Notice, notice of investigation, filing or service of a complaint, counterclaim, third-party complaint, summons, writ, motion or order or subpoena or receipt of any of the foregoing or similar documents by, on or against an **Insured**;

    (3)      any arbitration, mediation or other alternative dispute proceeding commenced by the service of a demand for arbitration, demand for mediation or similar document or pleading on an **Insured**;

    (4)      any written request to toll or waive any applicable statute of limitations commenced by the receipt of such written request by an **Insured**;

    (5)      any criminal proceeding that is commenced by the return of an indictment or the filing or receipt by an **Insured** of an information, criminal complaint or similar charging document or the foreign equivalent thereof against an **Insured**;

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(6)     any written request or other written statement for **Extradition** of any **Insured** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**; or

(7)     any **Investigation**.

**Claim** shall also include the foreign equivalent of any of the foregoing, and any appeal in connection with any of the foregoing.

(D)     "**Defense Expenses**" means costs, charges, fees and expenses including, but not limited to:

(1)     legal fees and expenses of defense counsel selected by the **Insureds** at defense counsel's usual hourly rates and including all reasonable out of pocket charges and expenses with no discount in rates or other reduction in such rates;

(2)     experts', forensic auditors', or consultants' fees and expenses;

(3)     mediator or arbitrator fees and expenses;

(4)     fees and expenses of vendors or service providers retained by the **Insured** or the **Insured's** defense counsel, including, without limitation, any document vendor, electronic discovery vendor, database vendor, document review vendor, data recovery vendor, court reporter or investigative service; and

(5)     premium for an appeal bond, attachment bond or similar bond, provided that the Insurer has no obligation to apply for or to furnish any such bond,

incurred in the investigation, adjustment, resolution (or attempted resolution), defense or appeal of any **Claim** or in connection with any written request or other written statement seeking extradition or rendition of an **Insured**. **Defense Expenses** will not include any **Insured's** overhead expenses or any salaries, wages, fees, or benefits of its **Insured Persons**.

In addition to the foregoing, in the event that:

(1)     the **Insured** gives sufficient notice of circumstances to the Insurer pursuant to GENERAL CONDITION (C)(2);

(2)     the **Insured** complies with all other terms of the policy, including, but not limited to, GENERAL CONDITION (B)(2); and

(3)     a **Claim** subsequently arises from such specific circumstances;

then, **Defense Expenses** shall also mean all reasonable costs, charges, fees (including, but not limited to legal fees and experts' fees and fees of an arbitrator or mediator) and expenses incurred in the investigation, adjustment, mitigation, resolution (or attempted resolution) and/or defense of any such specific circumstances that are incurred: (i) on or after the date such notice is received by the Insurer; and (ii) prior to the time such specific circumstances rise to the level of a **Claim**. Subject to all terms, conditions and exclusions of this policy, including, but not limited to, GENERAL CONDITION (B)(5), this extension of coverage shall not be deemed to waive any of the Insurer's rights hereunder.

MSES 72507 12 24                          **Page 2 of 36**
© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

With the prior consent of the Insurer, such consent not to be unreasonably delayed, conditioned or withheld, an **Insured** may select defense counsel different from that selected by other **Insured** defendants if such **Insured** reasonably determines that such selection is required due to a conflict of interest (including without limitation any defenses being available to one **Insured** that are not available to other **Insureds**) or as otherwise reasonably justified.

(E)     "**Employed Lawyer**" means any employee of an **Insured Entity** if and to the extent such employee is, or during the course of such person's employment was:

   (1)     admitted to practice law; or

   (2)     employed within an **Insured Entity's** office of general counsel, legal or compliance department, or its functional equivalent, for the purpose of supporting any internal counsel in the performing of legal services to an **Insured Entity**.

(F)     "**Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

(G)     "**Financial Insolvency**" means:

   (1)     the filing for protection from creditors under the United States Bankruptcy Code or any other federal, state or foreign law relating to insolvency;

   (2)     the status as a debtor-in-possession;

   (3)     the appointment by any government official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator, or similar official to control, supervise or manage the operations and/or liquidation of such entity or substantially all of such entity's assets or the disposition or assignment to creditors of all of such entity's assets; or

   (4)     the functional or foreign or offshore equivalent of any of subsections (1), (2) or (3) of this DEFINITION (G).

(H)     "**Insured**" means:

   (1)     each **Insured Entity**; and

   (2)     each **Insured Person**.

   Neither a **Not-for-Profit Entity** nor a **Portfolio Company** is an **Insured**.

(I)     **Insured Entity** means:

   (1)     the **Named Insured**;

   (2)     each **Investment Fund**;

   (3)     any family wealth planning entity that is organized as a trust, limited liability company, limited partnership or company created by or for the benefit of an **Insured Person**, as defined in DEFINITIONS (J)(1) or (J)(2) of below, or a spouse, domestic partner or family member of such an **Insured Person**;

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(4)    (a)    any entity which is or was a direct or indirect general partner, investment general partner, administrative general partner, managing general partner, investment manager, managing member, manager, managing shareholder or sole member of an **Investment Fund** or other **Insured Entity**, including any entity described herein,

    (b)    any entity (including, but not limited to, any blocker or feeder vehicle or waiver entity) which is or was, directly or indirectly, a limited partner, member or shareholder of an **Investment Fund** or of an entity described in this DEFINITION (I)(4) or in DEFINITION (I)(5),

    (c)    any entity (including but not limited to any general partnership, limited partnership, exempted limited partnership, limited liability company or trust) that is or was established or maintained by any **Insured** and that co-invests, or has co-invested, directly or indirectly, in one or more pooled investment vehicles, **Portfolio Company/ies** or other operating companies with an **Investment Fund**,

    (d)    any entity which is a direct or indirect management company of an **Investment Fund** and where such entity is formed by another entity described in this DEFINITION (I); and

    (e)    any entity (including, but not limited to, any holding company, special purpose vehicle, alternative investment vehicle, AIV trust, co-investment trust, general partnership, limited partnership, exempted limited partnership, limited liability company, series LLC or other multiple investment vehicle, or other acquisition vehicle) formed to hold a direct or indirect interest in one or more **Portfolio Company/ies**; provided that no entity that is owned solely by any of the following **Insureds** (or any combination thereof) shall be an **Insured Entity** under this DEFINITION (I)(4)(e): (i) any advisor as described in DEFINITION (J)(3); and/or (ii) any consultant as described in DEFINITION (J)(4);

but in the case of sub-clauses (b), (c) and (e) of this DEFINITION (I)(4), only to the extent that such entity is controlled solely by **Insureds**;

(5)    any entity which is the direct or indirect general partner, administrative general partner, managing general partner, managing member, manager or managing shareholder of an entity described in DEFINITION (I)(4) of these GENERAL TERMS AND CONDITONS or of another entity described in this DEFINITION (I)(5);

(6)    any entity listed on the Schedule of Insured Entities attached to and forming a part of this Policy;

(7)    advisory boards, advisory committees or similar committees formed pursuant to an operating agreement, management agreement, partnership agreement, resolution or similar document relating to an **Investment Fund**, or the foreign or functional equivalent of the foregoing documents; and

(8)    any **Subsidiary** or **Affiliate** of any of the foregoing.

"**Insured Entity**" shall also include any of the foregoing entities in each entity's respective capacity as a debtor-in-possession or functional or foreign equivalent.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

*Provided, however*, that by written notice to the Insurer, the **Named Insured** at the time of such notice may, in such **Named Insured's** sole discretion, exclude from this definition of **Insured Entity**, and therewith from coverage under this Policy, any entity that otherwise would fall within the scope of DEFINITIONS (I)(6) through (I)(8) above (including without limitation any entity that is in bankruptcy, receivership, administration, liquidation or reorganization or that is the subject of or a defendant in a **Claim**), *provided, however*, that this paragraph does not authorize the **Named Insured** to exclude from the definition of **Insured Entity** any entity that otherwise would fall within the scope of DEFINITIONS (I)(6) through (I)(8) above if a **Claim** has been brought by or on behalf of such entity against another **Insured** during the **Policy Period**.

(J)    "**Insured Person**" means any past, present or future:

      (1)    director, officer, trustee, chairman, partner, general partner, administrative general partner, managing general partner, venture partner, operating partner, member, managing member, founding principal, principal, member of a joint venture, senior managing director, executive-in-residence, operating executives, special partner or limited partner (other than a special partner or limited partner of an **Investment Fund**, unless such special partner or limited partner is otherwise an **Insured Person**), advisor or employee (including but not limited to any managing director, associate or analyst, trader or any part-time or seasonal employee) or any other natural person who was, now is, or shall be duly elected or appointed to any management position of an **Insured Entity**;

      (2)    foreign equivalent of (J)(1) above;

      (3)    advisor (including a member of any advisory board, advisory committee or similar committee) to or of an **Investment Fund**, but only for conduct solely within his or her duties as such;

      (4)    consultant, independent contractor to an **Insured Entity** (including but not limited to, any managing member(s), general partner(s) or other similar management person(s) or other employee(s) of an entity consultant or entity independent contractor), volunteer, but only if such consultant, independent contractor or volunteer is both a natural person (including, but not limited to, any managing member(s), general partner(s) or other similar management person(s) or other employee(s) of an entity consultant or entity independent contractor) or a single-person LLC and is entitled to indemnification by an **Insured Entity**;

      (5)    natural person not qualifying as an **Insured Person** under Definitions (J)(1) or (J)(2) above, serving or having served in a **Portfolio Company Capacity** or an **Outside Capacity** at the specific request of an **Insured**; provided, however, that the **Named Insured** shall have the right, in its sole discretion, to make a final determination as to whether a natural person qualifying as an **Insured Person** under this Definition (J)(5) shall be entitled to any potential coverage under this Policy; or

      (6)    **Employed Lawyer**.

**Insured Person** also means any natural person named as a prospective director or officer in any listing particulars, prospectus or private placement memorandum or similar document issued by any **Insured Entity**.

(K)    "**Interrelated Wrongful Acts**" means **Wrongful Acts** which are based on, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any of the same or related or series of related facts, circumstances, situations, transactions or events.

MSES 72507 12 24                     **Page 5 of 36**
© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(L)     "**Investigation**" means any civil, criminal, administrative or regulatory investigation or inquiry of an **Insured** by an **Investigating Authority**, but only after service of a subpoena, receipt of an order of investigation, receipt of a Wells Notice, receipt of a "target" letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual or its foreign equivalent) or receipt of another notice of investigation, notice of charges, order to show cause, SEC Form 1661, 1662, or 1664, a civil investigative demand, a search warrant or similar document or the foreign equivalent thereof.

**Investigation** shall also include a verifiable request or demand of an **Insured** for an interview, testimony, information or documents by any **Investigating Authority** in connection with:

(i)     a natural person in his or her capacity as an **Insured Person**; or

(ii)     the **Insured Entity's** business;

provided, however, that an **Investigation** shall not include any routine supervisory review by such **Investigating Authority** that appears unrelated to any **Wrongful Act** of an **Insured**.

(M)     "**Investigating Authority**" means:

(1)     a federal, state, local, foreign or offshore government authority or agency including without limitation the Equal Employment Opportunity Commission, Securities and Exchange Commission, U.S. Commodity Futures Trading Commission, Financial Services Authority, Financial Conduct Authority, Serious Fraud Office, Hong Kong Securities and Futures Commission, Department of Labor, Department of Justice, Department of Treasury, Pension Benefit Guarantee Corporation, Federal Communications Commission;

(2)     a grand jury or any state attorney general's office or securities regulator or the foreign equivalent;

(3)     any self-regulatory organization, whether based in United States or any foreign country (including, without limitation, the New York Stock Exchange, the American Stock Exchange, the London Stock Exchange, Euronext, the National Futures Association or the Financial Industry Regulatory Authority); or

(4)     any successor organizations, agencies or bodies of any the foregoing.

(N)     "**Investment Fund**" means

(1)     any fund which is listed in the Schedule of Investment Funds attached to and forming part of this Policy;

(2)     subject to COVERAGE EXTENSION (B) of the Management and Professional Liability Coverage Part, any pooled investment vehicle (including but not limited to any corporation, general partnership, limited partnership, exempted limited partnership, exempted company, limited liability company or trust) that is directly or indirectly sponsored, organized, formed or managed, or caused to be sponsored, organized, formed or managed, and controlled by an **Insured Entity**, during the **Policy Period**;

(3)     any past present or future affiliated fund holding companies, parallel funds, side-by-side funds, feeder funds and co-investment funds, managed accounts, alternative investment vehicles or other acquisition vehicles of an **Investment Fund** described in DEFINITIONS

(N)(1) or (N)(2) above, which is controlled, formed, organized or managed by an **Insured Entity**; or

(4)      any grantor trust other trust, fund, partnership, limited liability company, corporation or other entity formed or maintained for the purpose of monitoring, liquidating, dissolving or winding down a pooled investment vehicle described in Definitions (N)(1) through (N)(3) or for the purpose of holding investments in connection with monitoring, liquidating, dissolving or winding down such a pooled investment vehicle.

(O)      **"Loss"** means damages, judgments (including pre- and post-judgment interest), amounts paid in settlement or other amounts (including punitive, exemplary and multiplied damages where not uninsurable by law) in excess of any Retention set forth in the Declarations, whether paid by the Insurer or the **Insured**, and **Defense Expenses**, whether incurred, paid, to be paid or owed by the Insurer or by the **Insured**.

Except for **Defense Expenses**, **Loss** will not include:

(1)      amounts deemed uninsurable under the law most favorable to the insurability of such amounts (notwithstanding the foregoing, the Insurer shall not assert that a **Claim** alleging violations of Section 11, 12, or 15 of the Securities Act of 1933, as amended, constitute uninsurable loss under this Policy); or

(2)      fines, penalties or taxes imposed by law on an **Insured**, and paid to a federal, state, local or foreign governmental authority, other than (i) civil money penalties assessed against the **Insured** for a violation for any federal, state, local or foreign law, including, without limitation, any such penalty assessed pursuant to the Foreign Corrupt Practices Act or the UK Bribery Act of 2010, where not uninsurable by law; and (ii) tax liability imposed on an **Insured Person** who is not the taxpayer.

**NOTE**: With respect to the insurability of any amounts, the coverage provided by this Policy shall apply to the broadest extent permitted by law and the availability of such coverage shall be determined by the law of the jurisdiction most favorable to such coverage. In addition, if, based on the written opinion of counsel for the **Insured**, such amounts are not uninsurable under applicable law; the Insurer will not dispute the written opinion of counsel for the **Insured**.

With respect to amounts which are uninsurable under the law most favorable to the insurability of such amounts, no conduct or knowledge of any **Insured** will be imputed to any other **Insured** in connection with the determination as to whether such amounts constitute **Loss**.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, such consent not to be unreasonably withheld or denied) to which an **Insured** is a party.

Whether an **Insured Entity** has incurred **Loss** under this Policy shall be determined without regard to any indemnification rights provided to such **Insured Entity** by any **Portfolio Company**, and whether an **Insured** has incurred **Loss** shall be determined without regard to any indemnification rights provided to any **Insured** by an investor in any separately managed account or by any limited partner or other investor or client of an **Insured Entity**. Regardless of the foregoing, although no **Insured** shall be required to pursue the foregoing indemnification rights, if a **Portfolio Company** actually pays any such indemnification to or on behalf of such **Insured Entity**, or an investor in any separately managed account, or any limited partner, or other investor or client pays any such

MSES 72507 12 24          **Page 7 of 36**
© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

indemnification to or on behalf of such **Insured**, any such amounts shall be considered **Loss** for purposes of eroding or exhausting the Retention under this Policy.

(P)     "**Named Insured**" means the entity named in ITEM 1 of the Declarations.

(Q)     "**Not-for-Profit Entity**" means:

(1)     any corporation or organization, other than an **Insured**, which is exempt from taxation under Section 501(c)(3), (4) and (10) of Section 527 of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder; or

(2)     any property association, condominium association, homeowners association or similar association or organization.

(R)     "**Organizational Documents**" means any partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, charter, by-laws, articles of organization or other similar document or agreement.

(S)     "**Outside Capacity**" means any past, present or future service by an **Insured Person** or other natural person serving or having served at an **Insured**'s request as a director, officer, general partner, managing partner, manager, managing member, trustee, regent, governor or member of the Board of Managers or in any board, operational, management, oversight or committee role or position (or any foreign equivalent of any of the foregoing) of a **Not-for-Profit Entity**, but only during the time that such service is at the specific request of an **Insured**.

Provided, however, that the **Named Insured** shall have the right, in its sole discretion, to make a final determination as to whether a natural person qualifying as an **Insured Person** under DEFINITIONS (S), shall be entitled to any potential coverage under this Policy.

(T)     "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(U)     "**Portfolio Company**" means:

(1)     any entity (other than an **Insured Entity**) in which one or more **Investment Fund(s)**, or any **Insured Entity** of the type described in GENERAL DEFINITIONS (I)(4) above, directly or indirectly (including through any blocker or feeder vehicle), either has or had, at any time, a debt, equity, convertible securities, limited partnership, limited liability company or other ownership, creditor or investment interest (or the functional or foreign equivalent of any of the foregoing) and/or has or had the right to select, appoint or elect one or more directors, officers, general partners, managers or equivalent positions;

(2)     any entity (other than an **Insured Entity**) that is, was or comes to be controlled, directly or indirectly, by one or more **Investment Funds**, including any entity that owns, controls or holds any equity, investment or ownership interests in another entity, real or fixed property, loan, contract or contract right or any other asset;

(3)     any entity (other than an **Insured Entity**) in which one or more **Insured Entity(ies)** has or had, at any time, directly or indirectly (including through any blocker or feeder vehicle) the right to select, appoint, or elect one or more directors, general partners, managers, officers or equivalent positions;

(4)    any entity (other than an **Insured Entity)**, at which one or more **Insured Persons** serves, will serve, has served or served, at any time, at the request of any **Insured Entity**, as a director, officer, managing member, trustee, regent, governor, consultant, advisor, board observer, member of the board of managers, member of the management board, member of the supervisory board, member of a creditors committee, member of an equity committee, member of an independent committee, member of any committee of a board of directors (including any special committee, audit committee, compensation committee or special litigation committee), managing partner or general partner (or the functional or foreign equivalent of any of the foregoing);

(5)    any direct or indirect subsidiary or affiliate of any entity described in this Definition (U)(1) through (U)(3); or

(6)    each entity listed on the Schedule of Portfolio Company(ies) attached to and forming a part of this Policy.

(V)    "**Portfolio Company Capacity**" means any past, present or future service by an **Insured Person** arising out of serving or having served at an **Insured's** request, direction or consent as:

(1)    director, officer, managing member, trustee, regent, governor, consultant, advisor, board observer, member of the management board, member of a supervisory board, member of a creditors committee, member of an equity committee, member of an independent committee, member of any committee of a board of directors (including any special committee, audit committee, compensation committee or special litigation committee), member of the board of managers, managing partner or general partner, or in any board, operational, management, oversight or committee role or position of any past, present or future **Portfolio Company**;

(2)    a stockholder's representative for any current or former stockholders of any **Portfolio Company**, a member of any equity committee of a **Portfolio Company** or otherwise representing a **Portfolio Company's** stockholders in relation to the **Portfolio Company;**

(3)    a member of any creditors' committee of or otherwise representing a **Portfolio Company's** creditors or class of creditors in connection with the restructuring of a **Portfolio Company**, both inside and outside of bankruptcy; or

(4)    a position that is the functional or foreign equivalent of any of the foregoing positions identified in (1) or (3) directly above with respect to a **Portfolio Company**.

Provided, however, that the **Named Insured** shall have the right, in its sole discretion, to make a final determination as to whether a natural person qualifying as an **Insured Person** under DEFINITIONS (J)(5), shall be entitled to any potential coverage under this Policy.

(W)    "**Subsidiary**" means any entity during any time in which an **Insured Entity**:

(1)    owns or owned, directly or through one or more **Subsidiaries** or **Affiliates** at least fifty percent (50%) of the outstanding securities, membership units, partnership units or their equivalent of such entity;

(2)    holds, directly or through one or more **Subsidiaries** or **Affiliates**, any other controlling interest (whether by contract, ownership interest, voting power or otherwise) representing the right to elect or otherwise appoint or designate a majority of such entity's general

**MSES 72507 12 24**                    **Page 9 of 36**
© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

partners, managing members, managers, directors, officers, trustees, members of the Board of Managers or their equivalent;

(3)     is, directly or through one or more **Subsidiaries** or **Affiliates**, a general partner or managing member; or

(4)     has the right to appoint the general partner or managing member of such entity;

provided however, that a **Portfolio Company** and an **Investment Fund** are not **Subsidiaries** under this Policy.

(X)     "**Wrongful Act**" shall have the meaning given to that term in each Coverage Part attached hereto.


## II.     GENERAL CONDITIONS

(A)     **LIMIT OF LIABILITY, RETENTIONS AND INDEMNIFICATION**

(1)     The amounts set forth in ITEM 3.A. – 3.B. of the Declarations as the Limit of Liability for each Coverage Part shall be the Limit of Liability of the Insurer under such Coverage Part for all **Loss**, including **Defense Expenses**, from all **Claims** made or deemed made under such Coverage Part during the **Policy Period**. Each such amount shall be part of, and not in addition to, the amount set forth in ITEM 4 of the Declarations as the maximum Aggregate Limit of Liability under the Policy for all **Loss** from all **Claims** for which this Policy provides coverage.

(2)     **Defense Expenses** actually paid or reimbursed, as the case may be, by the Insurer in defense of a **Claim** will be part of and not in addition to the Insurer's Limits of Liability, and payment of **Defense Expenses** by the Insurer will reduce and may exhaust the Limits of Liability.

(3)     If coverage is available for a **Claim** under more than one Coverage Part, the maximum applicable Limit of Liability for such **Claim** shall be the largest applicable remaining Limit of Liability under only one of the applicable Coverage Parts.

(4)     With respect to a **Claim** under any Coverage Part attached hereto, the Insurer shall only pay **Loss** which is in excess of the amount set forth in ITEM 3 of the Declarations as the Retention applicable to each **Claim** under the applicable Coverage Part. If different Retentions are applicable to different parts of any **Loss** under this Policy, the applicable Retention will be applied separately to each part of such **Loss**, and the sum of such Retentions will not exceed the largest single applicable Retention set forth in ITEM 3 of the Declarations.

(5)     With respect to a **Claim** against an **Insured Person** for a **Wrongful Act** while serving in a **Portfolio Company Capacity** or in an **Outside Capacity**, no retention shall apply to such **Claim**, regardless of: (i) whether such **Insured Person** is indemnified by a **Portfolio Company** or **Not-for-Profit Entity**, (ii) whether insurance is available or paid by any insurer of such **Portfolio Company** or **Not-for-Profit Entity** to or on behalf of such **Insured Person**, or (iii) whether such **Insured Person** is or may be indemnified by an **Insured Entity**.

(6)     Except as set forth in Sections II.(A)(5) above:

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(a)     If all applicable **Insured Entities** are not permitted to indemnify or pay on behalf of the **Insured Person** pursuant to any **Organizational Documents** for any **Loss**, then such **Loss** shall be subject to no Retention.

(b)     If all applicable **Insured Entities** are permitted or required to indemnify or pay on behalf of the **Insured Persons** pursuant to the **Organizational Documents** for any **Loss**, but are unable or fail to do so as a result of **Financial Insolvency**, then such **Loss** shall be subject to no Retention.

(c)     If any **Insured Entities** that are permitted or required to indemnify or pay on behalf of the **Insured Persons** pursuant to any **Organizational Documents** for any **Loss**, but fail to do so for any reason other than **Financial Insolvency**, then the Insurer shall pay such **Loss** on behalf of the **Insured Persons**, and the Insurer shall be subrogated to the **Insured Person's** indemnification rights against such **Insured Entity** up to the amount of the **Insured Person's** portion of the Retention set forth in Item 3.A. of the Declarations that is paid by the Insurer (or for **Loss** covered under Employment Practices Liability Coverage Part, the Retention set forth in Item 3.B. of the Declarations).

(7)     If an **Insured Entity** fails or refuses to indemnify an **Insured Person** for **Loss**, other than as set forth in GENERAL CONDITION (A)(6) above, or to advance **Defense Expenses**, for any reason, within sixty (60) days of the **Insured Person's** written request of such indemnification or advancement of **Defense Expenses**, the Insurer shall advance such **Loss** on behalf of such **Insured Person** within the Retention and pursuant to the other terms, conditions and exclusion of this policy; *provided, however*, that the Insurer shall be entitled to recover the amount of **Loss** (other than **Loss** as set forth in GENERAL CONDITION (A)(6) above) advanced within the Retention from the **Insured Entity**, pursuant to GENERAL CONDITION (K)(2).

(B)     **DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS**

(1)     It shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** under this Policy.

(2)     No **Insured** may incur any **Defense Expenses** in excess of the applicable Retention amount specified in ITEM 3 of the Declarations or admit any liability for, or settle any **Claim**, without the Insurer's consent, such consent not to be unreasonably delayed or withheld. The Insurer will have the right and shall be given the opportunity to effectively associate in the investigation, defense and/or settlement, including but not limited to the negotiation of a settlement, and, with the consent of the **Insured**, enter into such settlement of any **Claim**; *provided, however,* that the Insurer's ability to associate in the defense shall not give the Insurer the obligation or right to control the defense, nor to have any veto-power in any decisions made in the defense of any matter.

(3)     For purpose of determining what constitutes a reasonable settlement under this Policy, the opinion of defense counsel approved by the **Insureds** shall be relied upon be the Insurer, which shall not assert that any such settlement recommended by defense counsel is unreasonable.

(4)     The Insurer shall advance covered **Defense Expenses** no later than thirty (30) days after receipt of written notice and details of such costs incurred by the **Insured**. Such advance

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

payments shall be made without regard to an **Insured's** ability to repay any amounts advanced.

(5)     Notwithstanding GENERAL CONDITION (B)(2) above, the **Insured** may settle any **Claim** without the Insurer's prior written consent (such consent not to be unreasonably delayed, withheld) if the total **Loss**, including **Defense Expenses**, resulting from such **Claim** does not exceed the amount of the applicable Retention set forth in ITEM 4 of the Declarations; provided, however, the **Insured** must advise the Insurer prior to the end of the **Policy Period** of any such settlement and provide any information in connection therewith that the Insurer may reasonably request. If the **Insured** reasonably expects that the total **Loss**, including **Defense Expenses**, resulting from any **Claim** will exceed the applicable Retention, the Insurer shall have the right to participate in any settlement negotiations, and the **Insured** agrees to obtain the consent of the Insurer prior to making any settlement offer or responding to any settlement demand, such consent not to be unreasonably delayed or withheld.

(6)     If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** made against the **Insured** contains both covered and uncovered matters, or because a **Claim** is made against both the **Insured** and others not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of **Loss** that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the **Insured** and others.

(7)     In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in GENERAL CONDITION (B)(6), the Insurer shall advance 100% of **Defense Expenses**, and shall also advance that portion of such **Loss** which the **Insured** and the Insurer agree is not in dispute, until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law. Any **Defense Expenses** advanced by the Insurer pursuant to this GENERAL CONDITION (B)(7) shall be without prejudice of the Insurer's right to seek return of some or all of the **Defense Expenses** advanced in the event that it is determined, subject to all of the terms and conditions of this Policy, that the **Insured** is not entitled to payment of such **Defense Expenses**.

(C)     **NOTICE**

(1)     The **Insured(s)** shall give written notice to the Insurer of any **Claim** made against an **Insured** as soon as practicable after the **Named Insured's** General Counsel first receives written notice of such **Claim** and reasonably estimates it will give rise to **Loss** in excess of the appliable Retention (unless the **Insured** is prohibited by court order, law, regulation or a federal, state, local, foreign or offshore government authority or agency (acting within its discretion under any law or regulation) to disclose the details or existence of such **Claim**) but in no event later than ninety (90) days after the expiration of the **Policy Period**; *provided, however*, if the **Insured** fails to provide notice of a **Claim** to the Insurer as specified in GENERAL CONDITION (C)(1), the Insurer shall not be entitled to deny coverage for such **Claim** based solely upon late notice unless the Insurer can demonstrate that its interests were materially prejudiced by reason of such late notice.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(2)    If an **Insured** becomes aware of circumstances that could give rise to a **Claim** and, during the **Policy Period** gives written notice of such circumstances to the Insurer, with particulars as to the reasons for anticipating such **Claim**, the nature and approximate date(s) of such circumstances, the approximate damages that may be claimed, if estimable, and the manner in which the **Insureds** first became aware of such circumstances, then any **Claim** subsequently arising from such circumstances shall be deemed to have been first made during the **Policy Period** in which the written notice described above was first given by an **Insured** to the Insurer, provided any such subsequent **Claim** is reported to the Insurer as set forth in GENERAL CONDITION (C)(1) above.

(3)    All notices under GENERAL CONDITIONS (C)(1) and (2) must be sent by electronic mail, certified mail, facsimile transmission or the equivalent to the address set forth in ITEM 6.A. of the Declarations; Attention: Claim Department.

**NOTE**: With respect to GENERAL CONDITION (C)(1), the coverage provided by this Policy shall apply to the broadest extent permitted by law and the availability of such coverage, and the adequacy and timeliness of notice pursuant to GENERAL CONDITION (C)(1) shall be determined by the law of the jurisdiction most favorable to such coverage.

(D)    **INTERRELATED CLAIMS**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made and noticed at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITION (C)(1) or, if applicable, GENERAL CONDITION (C)(2).

(E)    **OTHER INSURANCE**

Except in the case of personal liability insurance maintained by an **Insured Person**, all **Loss** payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible management liability insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy. Notwithstanding anything in this Policy to the contrary, the Insurer agrees and accepts that any insurance or indemnification from any other source, including whether in an **Outside Capacity**, a **Portfolio Company Capacity** or otherwise, benefitting an **Insured** on a **Claim** within the applicable Retention of this Policy shall be applied against such Retention as if such other insurance and/or indemnification did not exist, subject to GENERAL CONDITIONS (B)(5) and (B)(6) Allocation of these General Terms and Conditions of the Policy.

(F)    **SERVICE IN CONNECTION WITH PORTFOLIO COMPANIES AND NOT-FOR-PROFIT ENTITIES**

(1)    With respect to **Loss** from **Claims** made against an **Insured Person** arising out of his or her service in an **Outside Capacity** or a **Portfolio Company Capacity**, this Policy shall be specifically excess of:

(a)    any amounts actually paid to or on behalf of such Insured Persons under any valid and collectible insurance maintained by the applicable **Not-for-Profit Entity** or **Portfolio Company** or **Not-for-Profit Entity** covering such **Insured Persons** by reason of his or her service in such **Outside Capacity** or **Portfolio Company Capacity**, subject to GENERAL CONDITION (E) OTHER INSURANCE; and

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(b)      any amounts actually paid to or on behalf of such **Insured Person** under any valid and collectible indemnification from the applicable **Not-for Profit Entity** or **Portfolio Company**.

Notwithstanding GENERAL CONDITION (A)(4), (A)(5) and (E) and the preceding sentence, if **Loss** from such **Claim** is not paid to, or on behalf of, an **Insured Person** by such valid and collectible insurance and indemnification for any reason then this Policy will respond on behalf of the **Insured Person** as if it were primary with no retention being applicable, and shall pay **Loss** from any **Claim** made against the **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** or **Portfolio Company Capacity**, subject to all its terms and conditions and without prejudice to the Insurer's excess position.  In no event shall the Insurer withhold or delay payment of **Loss** on the grounds that an **Insured Person** is or may be entitled to (i) coverage under any other insurance policy; or (ii) indemnification from any **Portfolio Company** or **Not-for-Profit Entity**, as the case may be.

(2)      If, prior to or during the **Policy Period**, an **Insured Person** discontinues his or her service in an **Outside Capacity** or **Portfolio Company Capacity**, coverage will continue in full force and effect for the **Insured Person** in such **Outside Capacity** or **Portfolio Company Capacity**, but only with respect to **Claims** for **Wrongful Acts** committed or attempted or allegedly committed or attempted before the time the **Insured Person** discontinued serving in such capacity, provided, however that coverage for **Defense Expenses** will continue in full force and effect, subject to the other terms and conditions of this Policy, under this GENERAL CONDITION (F)(2) for **Wrongful Acts** committed or attempted or allegedly committed or attempted after such service has been discontinued.

(3)      If an **Insured Person** serving in a **Portfolio Company Capacity** no longer serves, for any reason, in a current **Insured Person's** capacity, then such **Insured Person** shall continue to be covered by this Policy with respect to any service in a continuing **Portfolio Company Capacity** so long as an **Insured Entity** provides indemnification to such **Insured Person** in such continuing **Portfolio Company Capacity**.

(4)      If a **Portfolio Company** ceases to be owned or held as an investment by an **Insured Entity**, then any **Insured Person** who served in a **Portfolio Company Capacity** at such **Portfolio Company** and who thereafter continues to serve at such **Portfolio Company** at the specific request of an **Insured Entity** shall continue to be covered by this Policy with respect to the **Insured Person's** service at such **Portfolio Company** for as long as such person continues to serve at such **Portfolio Company** at the specific request of an **Insured Entity**.

(G)      **CANCELLATION AND RENEWAL OF COVERAGE**

(1)      Except for the nonpayment of premium, as set forth in GENERAL CONDITION (G)(2) below, the **Named Insured** has the exclusive right to cancel this Policy at any time and for any reason at its sole discretion. Cancellation may be effective by mailing the Insurer written notice when such cancellations shall be effective, provided the date of the cancellation is no later than the Policy Expiration Date set forth in Item 2 of the Declarations. In such event, the Insurer shall retain the customary pro rata portion of the unearned premium.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(2)      The Insurer may only cancel this Policy for nonpayment of premium. Notice of cancellation will be sent to the **Named Insured** and the agent of record for the **Insured**, if applicable. The Insurer will provide not less than fifteen (15) days written notice stating when the Policy will be canceled; *provided, however,* that if the unpaid premium is paid in full before 12:01 a.m. on the 16th day following receipt by the **Named Insured** of the notice of cancellation, then, in that event, the Insurer shall not cancel this Policy.

(3)      The Insurer is under no obligation to renew this Policy upon its expiration. In the event that the Insurer decides not to renew this Policy, the Insurer will, at least ninety (90) days before the Policy Expiration Date set forth in ITEM 2 of the Declarations, deliver or mail to the **Named Insured** written notice, stating its decision to not renew the Policy.

(H)    **OPTIONAL EXTENSION PERIOD**

(1)      If either the **Named Insured** or the Insurer does not renew this Policy, or the **Named Insured** cancels the Policy, the **Named Insured** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to a one, three or six year extension of the coverage provided by this Policy with respect only to any **Claim** first made during the Policy Period or the one year period of time after the Policy Expiration Date, but only with respect to **Wrongful Acts** committed or attempted or allegedly committed or attempted prior to the Policy Expiration Date.

(2)      As a condition precedent to the right to purchase the Optional Extension Period, the total premium for this Policy must have been paid in full. The right of the **Named Insured** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Named Insured** that the **Named Insured** wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period no later than sixty (60) days after the Policy Expiration Date.

(3)      If the **Named Insured** elects to purchase the Optional Extension Period as set forth in (H)(1) and (H)(2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date of the Optional Extension Period.

(4)      The purchase of the Optional Extension Period will not in any way increase the Limits of Liability set forth in ITEM 3 of the Declarations, and the Limits of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to all applicable Limits of Liability for **Claims** made during the **Policy Period**.

(I)    **CHANGE OF CONTROL**

(1)      If, during the **Policy Period**, any of the following events occurs (a "**Transaction**"):

(a)      the merger or acquisition of the **Named Insured**, or of all or substantially all of its assets, with or by another entity such that that the **Named Insured** is not the surviving entity, unless the surviving entity is majority-owned by **Insureds** and/or former members of the **Named Insured**; or

(b)      the acquisition by any person, entity or affiliated group of persons or entities, other than **Insureds,** of the right to vote for, select or appoint (without regard to any **Insured's** right to so vote for, select or appoint) more than fifty percent (50%) of the directors, trustees, or members of the Board of Managers of the **Named Insured**;

MSES 72507 12 24              **Page 15 of 36**

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

then coverage under this Policy will continue in full force and effect with respect to **Wrongful Acts** committed or attempted or allegedly committed or attempted on or before the date of the **Transaction**, but coverage will cease with respect to **Wrongful Acts** committed or attempted or allegedly committed or attempted after such **Transaction**. The **Named Insured** shall have the right, upon payment of an additional premium to be determined by the Insurer, (such gross premium not to exceed 150% of the Annual Premium noted in Item 7. of the Policy's Declarations (less any pro-rata unearned premium)), to an extension of the coverage provided by this Policy, for up to six (6) years from the date of the Transaction (hereinafter "**Run-Off Period**"). If elected by the **Named Insured**, coverage provided by this Policy will only apply to any **Claim** first made during the **Policy Period** or the Run-Off Period, but only with respect to **Wrongful Acts** committed or attempted or allegedly committed or attempted on or prior to the date of such **Transaction**.

(2)    If, prior to or during the **Policy Period**, any entity ceases to be a **Subsidiary** or **Affiliate**, the coverage provided under any Coverage Part shall continue to apply with respect to a **Wrongful Act** that relates to such **Subsidiary** or **Affiliate**, but only with respect to **Wrongful Acts** committed or attempted or allegedly committed or attempted prior to the time such entity ceased to be a **Subsidiary** or **Affiliate**. Coverage for all other **Insureds** shall be unaffected by this GENERAL CONDITION (I)(2). After an entity ceases to be a **Subsidiary** or **Affiliate** of an **Insured**, it will not be deemed an **Insured** for the purposes of Exclusion (A)(4) of the Investment Fund Management and Professional Liability Coverage Part.

(J)    **SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES OF INSURED PERSONS**

The coverage afforded under this Policy shall, subject to all of its terms, conditions and exclusions, extend to:

(1)    the lawful spouse or domestic partner of any **Insured Person**; *provided however,* that this GENERAL CONDITION (J)(1) will apply only:

(a)    to the extent that the spouse or domestic partner is a party to any **Claim** solely in his or her capacity as a spouse or domestic partner of such **Insured Person** and not by reason of a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner; and

(b)    for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by such **Insured Person** and spouse or domestic partner, or property jointly held by such **Insured Person** and spouse or domestic partner, or property transferred from such **Insured Person** to the spouse or domestic partner; or other property held in a spouse's or domestic partner's name.

(2)    the estate, heirs, legal representatives or assigns of any **Insured Person** or assigns of any **Insured Person** who is deceased, or against the legal representatives or assigns of any **Insured Person** who is incompetent, insolvent or bankrupt; and

(3)    any family wealth planning or estate planning vehicle formed as a partnership, corporation, limited liability company, unincorporated organization or association or trust (including but

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

not limited to any grantor trust, irrevocable trust, revocable trust, bypass trust, GST trust, marital trust) or other entity used for estate planning purposes or any other estate planning or wealth management device(s), maintained by or for the benefit of an **Insured Person** or his/her spouse or domestic partner, estate, children, relatives, heirs or assigns but only to the extent that any of the foregoing is subject to a **Claim** by reason of a **Wrongful Act** by an **Insured**.

(K)     **ASSISTANCE, COOPERATION AND SUBROGATION**

(1)     In the event of any notice of **Claim** or of circumstances that may reasonably be expected to give rise to a **Claim**, the **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request with respect to such **Claim**, and further agrees that it will do nothing intentionally which in any way increases the Insurer's exposure under this Policy with respect to such **Claim**, or in any way prejudices the Insurer's potential or actual right of recovery, with respect to such **Claim**; *provided, however*, asserting any constitutional rights including, but not limited to, the privilege against self-incrimination under the Fifth Amendment shall not be construed as noncooperation by any **Insured**. The failure of any **Insured** to comply with this GENERAL CONDITION (K)(1) shall not impair the rights of any other **Insured** under this Policy.

(2)     In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured** up to the amount of the applicable paid **Loss**. The **Insured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require; *provided however*, that under no circumstances will the Insurer exercise or pursue, directly or indirectly, any right(s) of recovery, right(s) of subrogation or other rights under this GENERAL CONDITION (K)(2) against any **Insured** unless and until a non-appealable final adjudication adverse to such **Insured** in the underlying action  establishes that such **Insured** has committed a criminal or a deliberate fraudulent act, or has obtained any personal profit or pecuniary advantage to which such **Insured** was not legally entitled, *provided, however*, that the Insurer may only exercise or pursue, directly or indirectly, its right of subrogation hereunder against any **Insured Person** solely with the consent of the **Named Insured**, in the **Named Insured's** absolute discretion; it being further understood that nothing in this GENERAL CONDITION (K)(2)  shall be construed to require the Insurer to waive or dilute any right(s) of recovery or right(s) of subrogation that the Insurer may have against any person or entity not considered an **Insured** under this Policy. Notwithstanding the foregoing, under no circumstances shall the Insurer exercise or pursue, directly or indirectly, any right(s) of recovery, rights of subrogation pursuant to, through or based upon any contractual right of indemnification that the **Insured Entity** may have against any **Portfolio Company** or pursuant to, through or based upon any contractual right of indemnification that any **Insured** may have against any investor in any separately managed account or against any limited partner or other investor or client of an **Insured Entity**; provided, however, that this provision shall not negate or effect the Insurer's right to pursue any valid and collectible other insurance coverage procured by any **Portfolio Company** which may afford underlying coverage to any **Insured** in connection with any **Loss** from any **Claim** made against an **Insured** arising out **Wrongful Acts** or any liability attributable to any **Portfolio Company**, and the **Insured** shall execute all papers required and shall do everything reasonably necessary to secure and preserve Insurer's rights, including the execution of documents reasonably necessary to assign and/or enable the Insurer effectively to bring suit, arbitration or otherwise pursue

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

subrogation rights in the name of the **Insured Persons, Named Insured** or **Insured Entity** against any such other insurance carriers.

(3)    Any amounts recovered by the Insurer from third parties, net of the Insurer's cost of obtaining such recovery, shall be applied to reinstate the Limit of Liability available under this Policy for other **Claims**.

(L)    **EXHAUSTION**

If the Insurer's Limit of Liability for this Policy, as set forth in ITEM 4 of the Declarations, is exhausted by the payment of **Loss**, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(M)    **REPRESENTATIONS**

In the event that the Insurer establishes through a final non-appealable adjudication that any of the statements contained in the **Application** is materially false and such statement was material to the Insurer's decision to offer this Policy, no coverage shall be afforded under this Policy for any **Claim** that is directly related to such false statement with respect to any **Insured Person** who as of the inception date of this Policy had actual knowledge that such materially false statement was made in the **Application** if, and to the extent, such statement was made with the intent to deceive the Insurer. No knowledge or information possessed by any **Insured** will be imputed to, or for any reason (including under the law of principal and agent) deemed to be possessed by or the knowledge of any other **Insured**.

Notwithstanding the foregoing, the Insurer may not void or rescind coverage under this Policy.

It is understood and agreed that this GENERAL CONDITION (M) supersedes any inconsistent language in the **Application**.

(N)    **ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured** to determine its liability, nor may the **Insured** implead the Insurer in any **Claim**.

(2)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(3)    The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer and agreed to by the **Named Insured**.

(O)    **AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Named Insured** will act on behalf of the **Insureds** with respect to:

(1)    the payment of the premiums,

(2)      the giving of all notices to the Insurer as provided herein, and

(3)      the receiving of all notices from the Insurer,

provided however that, notwithstanding anything in this GENERAL CONDITION (O), any **Insured** may submit notice to the Insurer pursuant to GENERAL CONDITION (C).

(P)    **MERGERS & ACQUISITIONS**

If, during the **Policy Period**, an **Insured Entity** acquires control of any entity (other than a **Portfolio Company**), or acquires any entity by merger (each an **"Acquired Entity"**) that was not already an **Insured Entity** prior to the effective date of the merger such that the **Insured Entity** is the surviving entity (an **"Acquisition"**):

(a)      there will be coverage available under all Coverage Part of this Policy for any **Claim** made against the **Acquired Entity** and its **Insured Persons** for any **Wrongful Act** committed or attempted or allegedly committed after the effective date of the **Acquisition**.

(b)      there will be no coverage available under any Coverage Part of this Policy for any **Claim** made against the **Acquired Entity** or any of its directors, officers, general partner, managing members or employees who are not otherwise **Insured Persons** under this Policy, for any **Wrongful Acts** committed or attempted or allegedly committed or attempted before the effective date of the **Acquisition**.

(Q)    **PRIORITY OF PAYMENTS**

(1)      In the event of **Loss** arising from one or more covered **Claims** for which payment is due under the provisions of this Policy, then the Insurer shall in all events:

(a)      first, pay all **Loss** for which coverage is provided under Insuring Agreement (A) of the Investment Fund Management and Professional Liability Coverage Part;

(b)      then, only after payment of all **Loss** have been made pursuant to Insuring Agreement (A), pay all **Loss** for which coverage is provided under Insuring Agreement (B) of the Investment Fund Management and Professional Liability Coverage Part;

(c)      then, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the Chairman of the **Named Entity**, either pay or withhold payments of such other **Loss** for which coverage is provided or may be available under this Policy; and

(d)      after payments of all **Loss** have been made, first, pursuant to GENERAL CONDITION (Q)(1)(a) of this Coverage Part, then, made or withheld pursuant to subsection (Q)(1)(b) of this General Terms and Conditions, the remaining **Limit of Liability** shall thereupon become available for any covered **Claims** that may arise in the future.

(2)      In addition to and without limitation of the rights under the foregoing GENERAL CONDITIONS (Q)(1), in the event of **Loss** from one or more covered **Claims** is due following the **Financial Insolvency** of one or more **Insured Entities**, the Insurer shall pay

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

any **Loss** due and owing under this Policy (subject to the Policy's Limit of Liability and other terms and conditions) in the following priority:

(a)     First, the Insurer shall pay all **Loss** for which coverage is provided under Insuring Agreement (A) of the Investment Fund Management and Professional Liability Coverage Part; then

(b)     Second, after payment of **Loss** has been made pursuant to GENERAL CONDITION (Q)(2)(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, the Insurer shall pay all **Loss** on behalf of **Insured Entities** not subject to **Financial Insolvency** for which coverage is provided under Insuring Agreement (B) of the Investment Fund Management and Professional Liability Coverage Part; then

(c)     Third, after payment of **Loss** has been made pursuant to GENERAL CONDITION (Q)(2)(a) and GENERAL CONDITION (Q)(2)(b) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, the Insurer shall pay all **Loss** on behalf of **Insured Entities** subject to **Financial Insolvency** for which coverage is provided under Insuring Agreement (B) of the Investment Fund Management and Professional Liability Coverage Part; then

(d)     Fourth, after payments of all **Loss** have been made, first, pursuant to GENERAL CONDITION (Q)(2)(a) and, then pursuant to (Q)(2)(b) and then pursuant to (Q)(2)(c) above, with respect to whatever remaining Limit of Liability is available after such payments, the Insurer shall pay all **Loss** of **Insured Entities** not subject to **Financial Insolvency** for which coverage is provided under Insuring Agreement (C) of the Investment Fund Management and Professional Liability Coverage Part; then

(e)     Fifth, after payment of all **Loss** for all then-outstanding **Claims** has been made, first, pursuant to GENERAL CONDITION (Q)(2)(a) above and, second, pursuant to GENERAL CONDITION (Q)(2)(b) above and, third, pursuant to (Q)(2)(c) above and fourth pursuant to (Q)(2)(d) above, then with respect to whatever remaining Limit of Liability is available after such payments, the Insurer shall, at the written request of the Chairman of the **Named Insured**, either pay or withhold payments of such other **Loss** of **Insured Entities** subject to **Financial Insolvency** for which coverage is provided under Insuring Agreement (C) of the Investment Fund Management and Professional Liability Coverage Part.

(3)     Nothing in this CONDITIONS (Q) shall be construed to increase the **Limit of Liability** of the Insurer, which **Limit of Liability** shall remain the maximum liability of the Insurer for all **Claims** under all coverage under this Policy combined.

(R)     **FINANCIAL INSOLVENCY**

The **Financial Insolvency** of any **Insured** shall not relieve the Insurer of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this Policy is intended to protect and benefit the **Insured Persons** such that, in the event of bankruptcy of the **Insured Entity**, as a matter of priority the Insurer shall first pay **Loss** under Insuring Agreement (A) prior to paying **Loss** under Insuring Agreement (B) and/or Insuring Agreement (C) of the Investment Fund

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

Management and Professional Liability Coverage Part. Further, if a liquidation or reorganization proceeding is commenced by the **Named Insured** and/or any other **Insured Entity** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this Policy, the **Insureds** hereby:

(1)     waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such **Bankruptcy Law**; and

(2)     agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result.

In the event that any **Insured** for any reason seeks any order, ruling or other determination from any court or other authority that amounts or proceeds may be paid under the Policy notwithstanding the **Financial Insolvency** of any **Insured Entity**, then all costs, charges, fees and expenses incurred by an **Insured** with respect to such efforts shall be considered **Defense Expenses** within the meaning of this Policy.

(S)     **ENTIRE AGREEMENT**

The **Insureds** and the Insurer agree that the Declarations and the Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insureds** relating to this insurance.

(T)     **ALTERNATIVE DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise with regard to the construction or interpretation of the provisions of this Policy, whether arising before or after termination of this policy shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this Clause.

Either the Insurer or an **Insured** may elect the type of **ADR** process discussed below; *provided, however,* that such **Insured** shall have the right to reject the Insurer's choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The Insurer and each and every **Insured** agree that there shall be two choices of **ADR** process: (1) non-binding mediation administered by any mediator to which the Insurer and **Insured** mutually agree, in which the Insurer and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing commercial mediation rules; or (2) confidential binding arbitration submitted to an arbitration panel of three arbitrators, in which the **Insureds** shall select one arbitrator, the Insurer shall select one arbitrator and said arbitrators shall mutually agree upon the selection of the third arbitrator.  In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Regardless of the type of **ADR** process selected, the **Insured** shall select the location for the mediation or the arbitration. In addition, in the event of confidential arbitration, the arbitration shall be administered, at the election of the **Insured**, either by JAMS pursuant to its Comprehensive

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

Arbitration Rules and Procedures or by the International Institute for Conflict Prevention and Resolution, Inc. pursuant to its Administered Arbitration Rules.

If mediation is selected, either party shall have the right to bring litigation in any applicable state or federal court sixty (60) days after either party has elected mediation as the ADR process (unless the **Insured** rejects the Insurer's choice of mediation as the ADR process).

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

# INVESTMENT FUND MANAGEMENT AND PROFESSIONAL LIABILITY COVERAGE PART

**THIS IS A CLAIMS MADE COVERAGE PART WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.  PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer identified in the Declarations and the Insureds agree as follows:**

## I.    INSURING AGREEMENT

(A)    The Insurer shall pay on behalf of each **Insured Person** all **Loss** that an **Insured Entity** does not actually pay as indemnification and that the **Insured Person** incurs on account of any **Claim** first made against such **Insured Person**, individually or otherwise, during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**.

(B)    The Insurer shall pay on behalf of each **Insured Entity** all **Loss** that the **Insured Entity** has agreed to pay or has paid as indemnification to, for or on behalf of each **Insured Person** and that the **Insured Person** incurs on account of any **Claim** first made against such **Insured Person**, individually or otherwise, during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**.

(C)    The Insurer shall pay on behalf of each **Insured Entity** all **Loss** that the **Insured Entity** incurs on account of any **Claim** first made against the **Insured Entity** during the **Policy Period**, or if applicable, the Optional Extension Period, for **Wrongful Acts**.

## II.    COVERAGE EXTENSIONS

(A)    **INVESTIGATIONS COVERAGE**

The Insurer shall pay on behalf of each **Insured**, all **Loss** incurred by the Insured in connection with an **Investigation** of, or otherwise involving:

(1)    an **Insured Person** in his or her capacity as such or by reason of his or her past, present or future service or status as an **Insured Person**, a **Controlling Shareholder**, a **Selling Shareholder** or in his or her **Portfolio Company Capacity** or **Outside Capacity** or by reason of any **Fund Management Activities**; or

(2)    an **Insured Entity**;

first commenced during the **Policy Period**.

(B)    **NEW INVESTMENT FUNDS**

If, during the **Policy Period**, any **Insured**, in his, her or its capacity as such, forms, or causes to be formed, acquires or manages for the first time any **Investment Fund**, then:

(1)     coverage will be provided to such **Investment Fund** under this policy during a period of ninety (90) days after the final closing, or acquisition of such **Investment Fund**, or the date on which the **Company** first sponsors or manages, directly or indirectly, such **Investment Fund**, whichever is latest (not to exceed the Policy Expiration Date); and

(2)     there will be no coverage available pursuant to this Coverage Extension (B)(2) for such **Investment Fund** for any **Claim** made beyond the ninety (90) day period unless:

   (a)     the offering amount of such **Investment Fund** is less than or equal to $3,000,000,000, in which case such **Investment Fund** shall be deemed added to the Schedule of Investment Funds and be considered covered as an **Investment Fund** under this Policy; or

   (b)     the **Named Insured** gives the Insurer written notice, with full details (including but not limited to offering memorandum and partnership agreement) relating to such **Investment Fund** within the ninety (90) day period, and pays any additional premium required by the Insurer, in which case such **Investment Fund** shall be added to the Schedule of Investment Funds and be considered covered as an **Investment Fund** under this Policy.

If either subsection (1) or subsection (2) of this Coverage Extension (B) is satisfied, then such **Investment Fund** shall be considered an **Insured** under this Policy as though such **Investment Fund** was an **Insured** at the beginning of the **Policy Period**.


## III.     DEFINITIONS

(A)     "**Controlling Shareholder**" means any shareholder of an **Insured Entity** or a **Portfolio Company** that:

(1)     holds a ten percent (10%) or more equity ownership interest in such **Insured Entity** or **Portfolio Company**;

(2)     controls, or is alleged to control, any persons or entities within the meaning of Section 15 of the Securities Act of 1933 (as amended) or Section 20 of the Securities Exchange Act of 1934 (as amended) or within the meaning of any applicable federal, state or local statute, rule, regulation or law (whether common law or statutory law) or any functional or foreign equivalent of any of the foregoing; or

(3)     is liable or allegedly liable under any theory of control-person liability,

but only if such shareholder is otherwise an **Insured** under this Policy.

(B)     "**Fund Management Activities**" means any actual or alleged:

(1)     advisory, consulting, management, monitoring, investment, financial, administrative, legal, compliance, due diligence or other advice, services or activities performed by an **Insured**, directly or indirectly, for or on behalf of an **Investment Fund** (or any of its shareholders, limited partners, members, co-investors or other investors), an **Insured Entity**, a **Portfolio**

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

**Company** (or a prospective **Investment Fund**, prospective **Insured Entity**, or prospective **Portfolio Company**), or any **Affiliate** of any of the foregoing entities or a separately managed account, or any limited partner member of other investor in a separately managed account;

(2)     organization, reorganization, capitalization, recapitalization, restructuring or formation (or attempted formation) of an **Investment Fund** or **Insured Entity** (or prospective **Investment Fund** or prospective **Insured Entity**), or the purchase or sale of, or offer to purchase or sell, or a solicitation for the purchase or sale of any interest(s) in, or the calling of committed capital to, an **Investment Fund** or **Insured Entity** (or prospective **Investment Fund** or prospective **Insured Entity**);

(3)     advice, service, act, omission, statement or other activities concerning the following:

    (a)     the acquisition, disposition, purchase or sale of, or offer to purchase or sell, or solicitation for the purchase or sale, or spinning out or off, any direct or indirect interest(s) in or assets of an **Investment Fund** (or prospective **Investment Fund**) or a **Portfolio Company** (or prospective **Portfolio Company**);

    (b)     the merger, acquisition, consolidation or other business combination transaction (or prospective merger, acquisition, consolidation or other business combination transaction) involving any **Insured Entity**, **Portfolio Company** or prospective **Insured Entity** or prospective **Portfolio Company**;

    (c)     the financing, capitalization, recapitalization, of any **Portfolio Company** or any of its respective parents;

(4)     payment or prospective payment of any dividend  or other distribution by, the repurchase or redemption or prospective repurchase or redemption of shares by, the registration or prospective registration of any securities of, or the recapitalization or prospective recapitalization of, any **Portfolio Company** or prospective **Portfolio Company** or any of its respective parents;

(5)     actual or alleged advice, service, statement, acts, omissions or other activities of an **Insured** in connection with the investments in or prospective investments in, among other things, any fixed income security, investment-grade and noninvestment grade corporate debt, government bond, bank loans, structured loans, equity security, insurance policies or other insurance related investment, trade claims, real estate, or convertible security, public or private security, private placement, entity, mutual fund, exchange traded fund, hedge fund, private equity fund, fund of funds, money market fund, commercial paper, certificate of deposit, bankers acceptance, cash equivalent, asset, liability, debt (including without limitation any senior secured, senior subordinated, junior subordinated, mezzanine or unsecured debt), loan, credit index short, trade claim, debtor-in-possession loans, private claims, letters of credit, bond, high yield bond (including any unrated or below-investment grade instrument), convertible bond, exit equity financing, lease, lease residual, contract receivable, royalty, revenue interest, trust certificate, note, real property (including without limitation real estate, equipment, fixture, license or inventory), personal property, commodity, currency, futures contract, index futures contract, option agreements, option on a futures contract, warrant, swap, collar, floor, forward rate agreement, single stock swap, basket swap, index swaps, total rate of return swap contracts, total return swap contracts, credit default swap contracts, variance swap contracts, contract for differences

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(CFD), currency contract or other derivative instrument or contract, or any combination of any of the foregoing;

(6)    provision of direction or control of, or influence over, a **Portfolio Company** by an **Insured** in his, her or its capacity as a **Controlling Shareholder**;

(7)    providing, funding, structuring, arranging, negotiating, syndicating, securitizing, closing, or monitoring of, or any transaction involving:

    (a)    any equity, debt, convertible or other financial interest or obligation by or on behalf of or for the benefit of any **Investment Fund**, other **Insured Entity** or any **Portfolio Company**; or

    (b)    any assets, securities or other interests owned by, on behalf of or for the benefit of any **Insured Entity** or any **Portfolio Company**.

(8)    advice, service, act, omission, statement or other activity performed by an **Insured** in connection with or arising from:

    (a)    the granting or extending or refusal to grant or extend any credit, loan, debt or other financing;

    (b)    any financing transaction;

    (c)    declaring an event of default, accelerating any obligation, foreclosing on any asset(s) or security or otherwise exercising any remedy with respect to any obligation; or

    (d)    the exercising of actual or alleged control over funding or management of, being a fiduciary of, or controlling, any pension, employee benefit or welfare plan established by a **Portfolio Company** and regulated by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar, federal, state or local law or regulation; or

(9)    payment of any proceeds from the operation, retirement, repayment, disposition and/or refinancing of any investment or portion thereof that is distributed to an **Insured Entity** or investor in an **Insured Entity**;

(10)    selection, oversight, management, identification, monitoring or evaluation of, or research, review, analysis of due diligence regarding the selection, oversight, management, identification, monitoring or evaluation of any portfolio manager or any investment fund that is not an **Insured**; or

(11)    activity, act or omission relating to an **Insured's** interests or investments in a **Portfolio Company**, including: (i) serving on a creditors' committee of a **Portfolio Company**; (ii) participating in reorganization or workout negotiations in connection with an **Insured's** interests in a **Portfolio Company**; (iii) commencing or defending litigation or other claims in connection with an **Insured's** interests in a **Portfolio Company**; or (iv) exercising or seeking to exercise control or influence over any aspect of the management, operation, reorganization, consolidation, business combination, merger, divestiture, acquisition, liquidation or disposition of a **Portfolio Company**.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(C)     **"Loss"**, as defined in GENERAL DEFINITIONS (O) of the General Terms and Conditions, shall be deemed to also include, for purposes of this Coverage Part:

    (1)     fines, penalties and taxes, where not uninsurable by law; and

    (2)     damages, judgments or amounts paid in settlements and **Defense Expenses** for **Claims** arising out of or alleging any violation of:

        (i)     Sections 11, 12 or 15 of the Securities Act of 1933, as amended (or the equivalent sections of other federal, state, local or foreign law);

        (ii)    Sections 10(b), 20 or 30A (the Foreign Corrupt Practices Act) of the Securities Exchange Act of 1934, as amended, or Rule 10b-5, where insurable by law.

**Loss** shall also be deemed to include damages and **Defense Expenses** arising out of **Claims** for (a) designation of an **Insureds'** voting interests in connection with the restructuring of a **Portfolio Company**; (b) equitable subordination of an **Insured's** interests in a **Portfolio Company**; and (c) breach of an inter-creditor agreement involving creditors of a **Portfolio Company**.

(D)     "**Selling Shareholder**" means any security holder, limited partner, limited liability company member or other holder of any investment interest or owner of any real estate asset(s), any **Insured Entity** or any **Portfolio Company**, but only if such holder is otherwise an **Insured** under this Policy.

(E)     **"Wrongful Act"** means:

    (1)     for purposes of INSURING AGREEMENTS (A) and (B):

        (a)     any actual or alleged act, error, omission, neglect, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed or attempted, or allegedly committed or attempted, by an **Insured Person** in his or her capacity as such;

        (b)     any matter asserted against an **Insured Person** by reason of his or her status as such;

        (c)     any actual or alleged act, error, omission, neglect, recklessness, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed or attempted, or allegedly committed or attempted, by an **Insured Person** in his or her **Outside Capacity** or **Portfolio Company Capacity** or by reason of his or her status as such;

        (d)     any actual or alleged act, error, omission, neglect, recklessness, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed, or allegedly committed or attempted, by an **Insured Person** in the performance of, or failure to perform **Fund Management Activities**;

        (e)     any actual or alleged libel, slander, or oral or written publication of defamatory or disparaging material committed by an **Insured Person** in the performance of or failure to perform **Fund Management Activities**;

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(f)    any actual, attempted or possible violation of any foreign, offshore, federal, state or local domestic or self-regulatory statute, article, decree, rule or regulation by an **Insured Person**, where such actual, alleged, attempted or possible violation is in such **Insured Person's** capacity as such or by reason of such **Insured Person's** status as such;

(g)    any actual or alleged act, error, omission, neglect, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed or attempted, or allegedly committed or attempted, by an **Insured Person** in his or her capacity as a **Controlling Shareholder** or **Selling Shareholder** or by reason of his or her status as such; or

(h)    any actual or alleged act, error, omission, neglect, misconduct, recklessness, statement, misstatement, misleading statement or breach of fiduciary duty or other duty committed, or allegedly committed or attempted, by an **Employed Lawyer**, but only in connection with such **Employed Lawyer's** performance of, or actual or alleged failure to perform, legal services to or for the benefit of an **Insured Entity** or a **Portfolio Company** within the scope of his or her employment with an **Insured Entity**.

(2)    for purposes of INSURING AGREEMENT (C) only:

(a)    any actual or alleged act, error, omission, neglect, recklessness, misconduct, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed, or allegedly committed or attempted, by any person or entity for whom or which an **Insured** is liable or is alleged to be liable in relation to such **Insured's** performance of, or failure to perform, **Fund Management Activities**;

(b)    or any actual or alleged libel, slander, or oral or written publication of defamatory or disparaging material committed by an **Insured** or by a person or organization for whose acts an **Insured** is legally responsible in the performance of **Fund Management Activities**; or

(c)    any actual or alleged act, error, omission, neglect, recklessness, misconduct, statement, misstatement, misleading statement or breach of fiduciary duty or other duty or the aiding or abetting of any breach of duty, committed, or allegedly committed or attempted, by an **Insured**.

## IV.    **EXCLUSIONS**

(A)    Solely with respect to this Investment Fund Management and Professional Liability Coverage Part, the Insurer shall not be liable to make any payment for **Loss** in connection with that portion of a **Claim** against an **Insured**:

(1)    based upon or arising out of any:

(a)    intentionally fraudulent or intentionally criminal act or omission (other than **Foreign Violations**) by such **Insured**; or

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

(b)    **Insured's** gaining of any material personal profit or remuneration to which such **Insured** is not legally entitled;

*provided, however,* that the foregoing EXCLUSIONS (A)(1)(a) and (A)(1)(b) shall not apply unless and until a final non-appealable adjudication adverse to the **Insureds** in the underlying action establishes that such **Insured(s)** has/have engaged in conduct described by one or both of the foregoing EXCLUSIONS (A)(1)(a) and (A)(1)(b);

*provided, further*, that the foregoing EXCLUSIONS (A)(1)(a) and (A)(1)(b) shall not apply to any **Claim** based upon, arising out of or relating to Sections 11, 12 or 15 of the Securities Act of 1933;

A *"***Foreign Violation***"* shall mean such acts or omissions that are treated as a fraudulent act or omission, or a criminal violation, in a foreign jurisdiction but that are not a fraudulent act or omission, or a criminal violation, in the United States of America.

(2)    for any bodily injury, sickness, malicious use or abuse of process, wrongful entry or eviction, false arrest, false imprisonment, assault, battery, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof; *provided, however,* this EXCLUSION (A)(2) will not apply to any:

(a)    **Claim** arising from damage to, destruction of, or **Loss** of use of, investor, client or **Portfolio Company** records or data in an **Insured's** possession or while under an **Insured's** control;

(b)    direct or derivative **Claim** by, or on behalf of, a security holder, purchaser, partner, member or creditor (including without limitation any bankruptcy or other insolvency estate or any trustee, examiner, liquidator, receiver, rehabilitator, conservator, creditors' committee thereof) of or investor in an **Insured Entity**, a **Portfolio Company** (or prospective **Portfolio Company**) or any real estate assets owned by an **Insured Entity** or any **Claim** by any **Investigating Authority**;

(c)    actual or alleged humiliation, loss of reputation, mental anguish or emotional distress;

(d)    **Claim** based upon, arising out of, in consequence of, or in any way involving **Fund Management Activities**; or

(e)    **Claim** brought pursuant to the UK Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statue, law rule or regulation in any jurisdiction.

(3)    for any actual, alleged or threatened discharge, release, escape or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any direction, request or voluntary decision to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste; provided however, this EXCLUSION (A)(3) shall not apply to any:

(a)    direct or derivative **Claim** by or on behalf of a security holder, lender or creditor (including, without limitation any bankruptcy or other insolvency estate or any trustee, examiner, liquidator, receiver, rehabilitator, conservator, creditors'

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

committee thereof) of, or investor in, a **Portfolio Company**, an **Insured Entity** or any real estate assets owned by an **Insured Entity** or any **Claim** by any **Investigating Authority**; or

(b)     **Claim** based upon, arising out of, in consequence of, or in any way involving **Fund Management Activities**.

(4)     brought by, or on behalf of, or at the direction of any **Insured Entity** in collusion with the target of such **Claim**, except and to the extent such **Claim** is brought or maintained:

(a)     against an **Insured Person**, *provided*, *however*, that this subsection (IV)(A)(4)(a) shall apply only to **Defense Expenses** that constitute non-indemnifiable **Loss** incurred by such **Insured Person** in defending against such **Claim**;

(b)     by, or with the solicitation, assistance, participation, cooperation or intervention of, an **Insured** with respect to which failure to make such **Claim** reasonably could result in liability to the **Insured** for failure to do so or brought to satisfy any fiduciary duty;

(c)     directly or derivatively by a security holder of an **Insured Entity** who, when such **Claim** is made, is acting independently of, and without the solicitation, active assistance, active participation or active intervention of such **Insured Entity**;

(d)     by or on behalf of, at the request or direction of, or in the right of, an **Insured Entity** in bankruptcy, insolvency, receivership, administration or liquidation (including without limitation the bankruptcy estate of any **Insured Entity**), by any examiner, trustee (including but not limited to a litigation trustee), receiver, liquidator, rehabilitator, conservator, creditors' committee, shareholders' committee or any comparable authority (or any assignee of any of the foregoing) of an **Insured Entity** or by or on behalf of any **Insured Entity** in its capacity as a debtor-in-possession thereof (or by or on behalf of any assignee of any of the foregoing);

(e)     by, on behalf of, in the right of, at the request or direction of, or with the solicitation, assistance, participation or intervention of an **Insured Person** of an **Insured Entity** formed and operating in a jurisdiction outside the United States, Canada or any other common law country, including any territories and possessions thereof (hereinafter the Non-Common Law Jurisdiction), provided that such **Claim** is made and continuously maintained in a Non-Common Law Jurisdiction;

(f)     by, on behalf of, in the right of, at the request or direction of, or with the assistance, solicitation, cooperation, intervention or active participation of any employee who is not a founding principal or partner of an **Insured Entity**;

(g)     by, on behalf of, in the right of, at the request of, or with the solicitation, assistance, participation, cooperation or intervention of, an **Insured Person** who has not been a founding principal or partner of an **Insured Entity** at any time during the six months immediately preceding the date on which such **Claim** is first made;

(h)     by, on behalf of, at the request of, in the right of, or with the solicitation, assistance, participation, cooperation or intervention of an **Insured Person** who is engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

pursuant to the Sarbanes-Oxley Act of 2002) or any protected activity specified in any other "whistleblower" protection pursuant to any state, local or foreign laws;

(j)     by, on behalf of, at the request of, in the right of, or with the participation, assistance, intervention or solicitation of any independent director of an **Investment Fund**, in such person's capacity as such;

(k)     against any independent director of an **Investment Fund**, in such person's capacity as such; or

(l)     against an **Employed Lawyer**.

(5)     solely with respect to Insuring Agreement (C), for any actual or alleged liability of an **Insured Entity** under any express written contract or agreement to which an **Insured Entity** is a party (other than any **Organizational Documents**, joint venture agreement, co-investment agreement, or other organizational, advisory, monitoring and/or management agreement or subscription agreement, or similar agreement of any **Insured Entity** or **Portfolio Company**); provided however, this EXCLUSION (A)(5) will not apply to any:

(a)     **Claim** based upon, arising out of, in consequence of, or in any way involving **Fund Management Activities** (including, but not limited to, the performance of or failure to perform **Fund Management Activities**);

(b)     liability that would attach to an **Insured** even in the absence of a contract or agreement; or

(c)     any **Claim** based upon, arising out of or relating to any contract or agreement with any **Investment Fund** or investor or client in any separately managed account.

(6)     to the extent such **Claim** is based upon, arising out of, in consequence of, or in any way involving an **Insured Person** acting in his or her capacity as a director, officer, general partner, managing general partner, managing director, principal, member, managing member, advisor, consultant, trustee or employee of any entity other than, an **Insured Entity**, a **Portfolio Company** or a **Not-for-Profit Entity**; or

(7)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any regulation promulgated thereunder or any similar, federal, state or local law or regulation in connection with any pension, employee benefit or welfare plan sponsored by any **Insured Entity** for the benefit of such **Insured Entity's** employees.

(B)     Solely with respect to this Investment Fund Management and Professional Liability Coverage Part, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(1)     based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance of which this Policy is a renewal or a replacement; or

(2)     based upon, arising out of, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation, civil, criminal, administrative or regulatory proceeding against an **Insured** or

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

investigation of an **Insured** which incepted prior to the Pending and Prior Proceeding Date set forth in ITEM 3.A. of the Declarations.

No conduct or knowledge of any **Insured** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

# EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

**THIS IS A CLAIMS MADE COVERAGE PART WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.  PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on the Application, and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer identified in the Declarations and the Insureds agree as follows:**

## I.      INSURING AGREEMENT

The Insurer shall pay on behalf of the **Insureds Loss** resulting from **Claims** first made against the **Insureds** during the **Policy Period** or, if applicable, the Optional Extension Period, for **Wrongful Acts**.

## II.     DEFINITIONS

(A)      "**Claim**," as defined in GENERAL DEFINITIONS (D) of the General Terms and Conditions, shall also include, for purposes of this Coverage Part, an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or similar state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**. **Claim** shall not include any labor or grievance arbitration or other proceeding which is subject to a collective bargaining agreement.

(B)      "**Insured Person**," as defined in the GENERAL DEFINITIONS (N) of the General Terms and Conditions, shall also include, for purposes of this Coverage Part, any past, present or future intern or volunteer of an **Insured Entity**.

(C)      "**Loss**," as defined in GENERAL DEFINITIONS (S) of the General Terms and Conditions, shall be deemed to include, for purposes of this Coverage Part, damages (including back pay and front pay) and liquidated damages pursuant to Age Discrimination in Employment Act or Equal Pay Act or similar state or local statutes.

Loss does not include compensation earned by the claimant in the course of employment but not paid by the Company, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days, sick days, prerequisites, stock options or similar rights; provided this exclusion shall not apply to any back pay or front pay or any additional compensation allegedly due as a result of otherwise covered **Claim** for a **Wrongful Act**.

(D)      "**Wrongful Act**" means any actual or alleged:

(1)      wrongful dismissal, discharge, or termination of employment whether actual or constructive;

(2)      employment discrimination of any kind including violation of any federal, state or local law, regulation, or ordinance, common law, or public policy involving employment or discrimination in employment which would deprive or potentially deprive any person of

**MSES 72507 12 24**                       **Page 33 of 36**
© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, gender, national origin, creed, disability, marital status, sexual orientation or preference, pregnancy, HIV or other health status, Vietnam era veteran or other military status, genetic makeup or refusal to submit to genetic makeup testing, or other protected status established under federal, state or local law, ordinance or public policy;

(3) hostile work environment or sexual or other type of harassment, including, but not limited to unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature or other harassment;

(4) breach of an oral, written or implied contract;

(5) wrongful deprivation of career opportunity, failure to grant tenure, employment related misrepresentations, retaliatory treatment against an employee, failure to promote (including without limitation failure to make partner or principal), demotion or adverse change in the terms, conditions or status of employment, wrongful discipline or evaluation, or refusal to hire;

(6) employment-related emotional distress, mental anguish, libel, slander, humiliation, defamation, or invasion of privacy;

(7) failure to adopt, comply with or enforce adequate employment or workplace policies and procedures;

(8) wrongful or negligent: (i) reference; (ii) refusal to provide a reference; (iii) hiring; (iv) supervision; (v) evaluation (vi) retention of employees; (vii) suspension; (viii) demotion; or (ix) reduction in responsibility or status;

(9) retaliation for enforcing or alleged intention to enforce or report on, any rights under any law, statute or regulation;

(10) breach or violation of any employee handbook or manual or human resources policies and procedures, an any organizational or management advisory documents of any **Insured Entity**, a **Not-for-Profit Entity** or a **Portfolio Company**, including, but not limited to, a partnership agreement, operating agreement, advisory and/or management agreement or subscription agreement;

(11) employment related misrepresentations;

(12) other employment related torts; and

(13) violation of an individual civil rights relating to any of the above;

by an **Insured Entity** or by an **Insured Person** in his or her capacity as such or in his or her **Outside Capacity** or **Portfolio Company Capacity**.

With respect to a **Claim** brought by a natural person other than: (i) an **Insured Person**; (ii) an employee or executive of a **Not-for-Profit Entity** or a **Portfolio Company**; or (iii) an applicant for employment with an **Insured Entity**, a **Not-for-Profit Entity** or a **Portfolio Company**, whether individually or as a class or a group, **Wrongful Act** shall only mean any actual or alleged discrimination, sexual or other type of harassment, whether direct, indirect, intentional or

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

unintentional committed, or allegedly committed, by an **Insured Entity** or by any **Insured Person** in his or her capacity as such or in his or her **Outside Capacity** or **Portfolio Company Capacity**.

## III.    EXCLUSIONS

(A)    Solely with respect to this Employment Practices Liability Coverage Part, the Insurer shall not be liable to make any payment for **Loss** in connection with that portion of a **Claim** made against an **Insured**:

    (1)    for any actual or alleged bodily injury, sickness, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; provided however, this EXCLUSION (A)(1) will not apply to any allegations of emotional distress, loss of reputation, mental anguish, or humiliation;

    (2)    for any actual or alleged willful breach by an **Insured Entity** of any express written contract; (other than any employee handbooks or human resources policies and procedures, and any **Organizational Documents** or management advisory documents of any **Insured Entity**, including but not limited to a partnership agreement, operating agreement, advisory and/or management agreement or subscription agreement); provided, however, this EXCLUSION (A)(2) will not apply to:

        (a)    **Defense Expenses**; or

        (b)    to the extent that an Insured would have been liable in the absence of such express written contract or agreement;

    (3)    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulation promulgated thereunder or any similar, federal, state or local law or regulation; provided however this EXCLUSION (A)(3) shall not apply to any **Claim** based upon, arising out of, or directly or indirectly resulting from any discrimination, retaliation or wrongful termination of employment, including, but not limited to, any **Claim** for an actual or alleged violation of Section 510 of ERISA;

    (4)    for actual or alleged violation of the National Labor Relations Act or other similar provisions of any federal, state or local statutory law or any rules or regulations promulgated thereunder; provided, however, this EXCLUSION (A)(4) shall not apply to actual or alleged retaliation against an **Insured Person** for exercising his or her rights under any such law(s);

    (5)    for any costs associated with modification of any building or property in order to provide any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation or common law; or

    (6)    for any actual or alleged violation of:

        (a)    any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law;

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

      (b)      the Fair Labor Standards Act (except the Equal Pay Act) or any other law concerning wage and hour practices, including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices;

      (c)      the Occupational Safety and Health Act;

      (d)      the Racketeer Influenced and Corrupt Organizations Act;

      (e)      the Federal False Claims Act; or

      (f)      rules or regulations promulgated under any of such statutes or laws listed in this EXCLUSION (A)(6), amendments thereto or similar provisions of any federal, state, local or foreign statutory law or common law.

(B)      Solely with respect to this Employment Practices Liability Coverage Part, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

      (1)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other policy of insurance of which this Policy is a renewal or a replacement; or

      (2)      based upon, arising out of, or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** underlying or alleged in any prior and/or pending litigation, civil, criminal, administrative or regulatory proceeding or investigation against an **Insured** which incepted prior to the Pending and Prior Proceeding Date set forth in ITEM 3.B. of the Declarations.

No conduct or knowledge of any **Insured** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

POLICY NUMBER: **DOP1000007**

EFFECTIVE DATE: **12/30/2024**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SCHEDULE OF INVESTMENT FUNDS

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that each of the following entities shall be considered an **Investment Fund** under the Policy:

Vivo Capital Fund IX, L.P.

Vivo Capital Fund IX (Cayman), L.P. Vivo Capital Fund VIII, L.P.

Vivo Capital Surplus Fund VIII, L.P. Vivo Innovation Fund II Holdings, L.P. Vivo Opportunity Co-Invest, L.P.

Vivo Opportunity Fund Holdings, L.P. Vivo Co-Invest (S), L.P.

Vivo Panda Fund, L.P. Vivo Super VIII Limited

Vivo Ventures Fund Cayman VII, L.P. Vivo Ventures Fund VII, L.P.

Vivo Ventures VII Affiliates Fund, L.P. Vivo Asia Opportunity Fund Holdings, L.P. Vivo Capital Fund X, L.P.

Vivo (Suzhou) Health Industry Investment Fund (Limited Partnership)

All other terms, conditions and exclusions remain unchanged.

**MSES 71903 12 24**

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

POLICY NUMBER: **DOP1000007**

EFFECTIVE DATE: **12/30/2024**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIFIC LITIGATION EXCLUSION

**This endorsement modifies insurance provided under the following:**

EXCESS MANAGEMENT LIABILITY INSURANCE

In consideration of the premium charged, it is understood and agreed that this Policy is amended as follows:

1. The **Insurer** shall not be liable for payment of **Loss** under this Policy on account of any **Claim** resulting from any litigation, claim, proceeding, event of other matter described below, or any **Wrongful Act** or **Interrelated Wrongful Act** alleged therein:

   Per CNA loss runs dated 11/4/24; or

   Any **Claim** arising from the same or substantially the same facts, circumstances, allegations, **Wrongful Act(s)** or **Interrelated Wrongful Act(s)** that are the subject of or the basis for any such litigation or proceedings described above, whether or not such **Claim** involved the same or different **Insureds**, the same or different causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

2. For the purposes of this endorsement, **Interrelated Wrongful Act** means any **Wrongful Act(s)** that are logically or causally connected by, based upon, arising out of, directly or indirectly resulting from, in consequence of, a repetition of or in way involving any of the same facts, circumstances, situations, events, transactions, causes or series of related facts, circumstances, situations, events, transactions or causes.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

© 2024 MSIG Holdings (U.S.A.), Inc. All rights reserved.

POLICY NUMBER: **DOP1000007**

**IL 09 85 12 20**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)    $  INCLUDED** |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** <br><br> **COMMERCIAL EXCESS DIRECTORS & OFFICERS LIABILITY** <br><br><br><br> **Additional information, if any, concerning the terrorism premium:** <br><br><br> |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses        80    %** |
| (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2020
IL 09 85 12 20

 **MSIG**

Date: **02/14/2025**

Named Insured: **VIVO CAPITAL, LLC**

Policy Effective Date: **12/30/2024**          Underwriting Office: **FINANCIAL LINES**

Agent: **WILLIS TOWERS WATSON NORTHEAST, INC.**          Agent Contact Name: **JUSTIN COHEN**

### POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for certified acts of terrorism is included in your current policy. Under your existing coverage, any losses resulting from certified acts of terrorism will be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government reimburses 80% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act of 2002 (the "Act"), as amended, contains a $100 Billion cap that limits the United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 Billion in any one calendar year. If the aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 Billion in a calendar year for all insurers, the Treasury Department shall not make any payment for any portion of the amount of such losses that exceeds $100 Billion and your coverage may be reduced.

The Act does not cover any losses incurred due to punitive damages.

The portion of your annual premium that is attributable to coverage for certified acts of terrorism is $0.

Name of Insurer: **MSIG SPECIALTY INSURANCE USA INC.**

Policy Number:   **DOP1000007**

**Mitsui Sumitomo Marine Management (U.S.A.), Inc., for
Mitsui Sumitomo Insurance USA Inc.
Mitsui Sumitomo Insurance Company of America
MSIG Specialty Insurance, USA Inc.
MSIG Insurance Services, Inc.**
15 Independence Boulevard, P.O. Box 4602, Warren, NJ  07059-0602
www.msigusa.com

A Member of **MS&AD** INSURANCE GROUP

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – U.S. ECONOMIC OR TRADE SANCTIONS

This endorsement modifies Insurance provided under all Coverage Parts included in this policy.

This insurance does not apply under any coverage part to "bodily injury", "property damage" or loss in whole or in part:

A.  when the United States of America has imposed any trade or economic sanction or embargo prohibiting the insurance of such "bodily injury", "property damage" or loss; or

B.  occuring in any jurisdiction that is the subject of any trade or economic sanction or embargo imposed by the United States of America.

All other terms and conditions remain unchanged.